NOT FOR PUBLICATION

**UNITED STATES DISTRICT COURT**
**DISTRICT OF NEW JERSEY**

| | | |
|---|---|---|
| JOHN LAHOUD and GEORGINA (LAHOUD) NICO, | : : : | **Civil Action No. 25-08800-MEF-AME** |
| Plaintiffs, | : : | **OPINION** |
| v. | : : | |
| MERRILL LYNCH, et al., | : : : | |
| Defendants. | : : : | |

**ESPINOSA, U.S.M.J.**

This matter comes before the Court on Defendants' motion to transfer this action to the United States District Court for the Western District of North Carolina. Plaintiffs oppose the motion. The Honorable Michael E. Farbiarz, U.S.D.J., referred the motion to this Court pursuant to 28 U.S.C. § 636(a), which authorizes a magistrate judge to "hear and determine any pretrial matter before the court," with certain inapplicable exceptions. The Court has considered the parties' written submissions and, in its discretion, rules without oral argument. *See* Fed. R. Civ. P. 78. For the following reasons, the motion is granted, and the Court accordingly transfers this action to the Western District of North Carolina pursuant to 28 U.S.C. § 1404(a).

**I.     BACKGROUND**

This action seeks recovery of deferred compensation allegedly owed under an employee incentive compensation agreement. Plaintiffs John Lahoud and Georgina Nico ("Plaintiffs") were previously employed as financial advisors by defendant Merrill Lynch ("Merrill"), a subsidiary of defendant Bank of America ("BOA") (collectively, "Defendants"). Compl. ¶ 24.

1

According to the Complaint, Merrill is a New York corporation headquartered in New York, and BOA is a Delaware corporation headquartered in North Carolina. *Id.* ¶¶ 17-18. Plaintiffs allege they operated out of Merrill's Paramus office until relocating to New York in 2019. *Id.* ¶ 21. Plaintiffs ultimately terminated their employment with Merill on June 11, 2021, under alleged circumstances involving Plaintiffs' belief that Merill was underreporting the revenue they generated.[1] *Id.* ¶¶ 24-31.

While employed by Merill, Plaintiffs participated in a deferred compensation agreement known as "WealthChoice Contingent Award Plan" (the "Plan"), which they allege was a mandatory condition of employment. *Id.* ¶¶ 8, 36. Under the Plan, a portion of a financial advisor employee's incentive compensation is conferred as a cash award earned and payable over time. *See* Plan, Art. 1.[2] *See also* Compl. ¶ 35. At all relevant times, Merrill was a Plan "Participating Employer," and BOA was the Plan sponsor and administrator. Compl. ¶¶ 17, 57.

The Complaint asserts that an employee's deferred compensation award vests, that is, becomes earned and payable, in three or eight years, as set forth in the applicable Plan-related "Award Agreements" entered into by Plaintiffs and BOA. *Id.* ¶ 35. *See also* Award Agreements.[3] However, the Complaint further asserts that the Plan system, referring to the Plan and its related Award Agreements, includes a "Cancellation Rule," under which an award can be deemed forfeited if the employee leaves Merrill before the vesting date. *Id.* ¶ 37. Contending this Cancellation Rule is unlawful under ERISA, 29 U.S.C. § 1132(a), Plaintiffs claim Merrill and BOA wrongfully deprived Plaintiffs of Plan awards deemed forfeited when Plaintiffs resigned from employment. *Id.* ¶¶ 9, 12, 15, 39, 48-50.

---

[1] The Court does not recount those allegations in detail here, as they are not germane to the question presented on this motion to transfer venue.

[2] The Plan, referenced repeatedly in the Complaint, is attached to Defendants' motion as Exhibit A.

[3] The Award Agreements pertaining to Plaintiffs are attached to the motion as Exhibits B, C, and D.

2

On June 10, 2025, Plaintiffs filed this action in the District of New Jersey. The Complaint asserts claims for declaratory and equitable relief under ERISA. Specifically, Plaintiffs seek a declaration that the Plan is governed by ERISA and that the Cancellation Rule violates the statute. They further seek recovery of deferred compensation awards they allege they are entitled to receive under the Plan.[4]

Relevant to this motion, the Complaint asserts New Jersey is a proper venue for this action under the Plan's "exclusive venue provision." *Id.* ¶ 23. According to the Complaint, the governing forum selection clause "provides for the venue to be situated in either the state or federal courts of Mecklenburg County North Carolina, where defendant BOA is headquartered, or 'where this Award is made and/or to be performed,'" which Plaintiffs maintain is New Jersey. *Id.* (quoting Award Agreement's forum selection clause).[5]

On August 25, 2025, Defendants filed this motion to transfer this action to the Western District of North Carolina, pursuant to 28 U.S.C. § 1404(a).

## II.    DISCUSSION

Defendants primarily move for transfer of venue based on the forum selection clause contained in the parties' Award Agreement covering each "Performance Year" in connection with Plaintiffs' participation in the Plan. They also maintain transfer is warranted under the first-filed rule.[6]

---

[4] The parties dispute whether the Plan is subject to ERISA. However, as Plaintiffs' Complaint pleads claims arising under that federal statute, this Court has subject matter jurisdiction pursuant to 28 U.S.C. § 1331. *See Caterpillar Inc. v. Williams*, 482 U.S. 386, 392 (1987) (holding that, under well-pleaded complaint rule, Section 1331 jurisdiction generally exists "when a federal question is presented on the face of the plaintiff's properly pleaded complaint.").

[5] This quote is set forth as it appears in the Complaint. However, as the following discussion will show, the forum selection clause states: "where this *grant* is made and/or to be performed." (emphasis added).

[6] The Court does not reach the argument seeking transfer under the first-filed rule in view of its decision based on the forum selection clause.

Under 28 U.S.C. § 1404(a), a court "may transfer any civil action to any other district where it might have been brought" if the transfer will further "the convenience of the parties" and serve the "interest of justice." The statute applies "where both the original and requested venue are proper." *Jumara v. State Farm Ins. Co.*, 55 F.3d 873, 878 (3d Cir. 1995) (noting contrast between venue transfer statutes 28 U.S.C 1404(a) and 28 U.S.C. 1406, as the latter only applies if the original venue is improper). Generally, courts in this district apply the analysis articulated by the Third Circuit in *Jumara v. State Farm* to determine whether a Section 1404(a) transfer is warranted. 55 F.3d at 879-80. That analysis calls for consideration of various private and public interest factors. *Id.* The private interest factors are: (1) the plaintiff's choice of forum; (2) the defendant's forum preference; (3) whether the underlying claim arose elsewhere; (4) the convenience of the parties based on their relative physical and financial condition; (5) the convenience of witnesses; (6) the location of books and records. *Jumara*, 55 F.3d at 879. The six public interest factors are: (1) the enforceability of any judgment obtained by the plaintiff; (2) practical considerations that could make trial easy, expeditious, or inexpensive; (3) administrative difficulty resulting from court congestion; (4) local interest in deciding local controversies; (5) the public policies of each forum; and (6) the familiarity of the trial judge with applicable law. *Id.* at 879-80.

However, where transfer is sought based on a forum selection clause, the foregoing analysis must be modified. *See Atl. Marine Constr. Co. v. U.S. Dist. Court for the W.D. Tex.*, 571 U.S. 49 (2013). It is well-established that forum selection clauses are presumptively valid and enforceable. *See M/S Bremen v. Zapata Off–Shore Co.*, 407 U.S. 1, 10 (1972). In *Atlantic Marine*, the Supreme Court held that although Section 1404(a) "provides a mechanism for enforcement of forum-selection clauses that point to a particular federal district," *id.* at 59, "the

4

[traditional] calculus changes" because enforcement of the clause both protects the parties' legitimate expectations and furthers vital judicial interests. *Id.* at 63. Thus, where a valid forum selection clause applies, the venue transfer analysis is substantially truncated, as follows: (1) the plaintiff's choice of forum is given no weight; and (2) the court only considers public interest factors, not the parties' purported private interests.[7] *In re McGraw-Hill Glob. Educ. Holdings LLC*, 909 F.3d 48, 57 (3d Cir. 2018) (citing *Atlantic Marine*, 571 U.S. at 64). The burden is on the party resisting the forum selection clause to demonstrate that the Court should not transfer the action to a bargained-for forum. *Atl. Marine*, 571 U.S. at 63. In short, *Atlantic Marine* made clear that "[w]hen the parties have agreed to a valid forum-selection clause, a district court should ordinarily transfer the case to the forum specified in that clause. Only under extraordinary circumstances unrelated to the convenience of the parties should a § 1404(a) motion be denied." *Atl. Marine*, 134 S. Ct. at 62.

Here, the Award Agreement contains a forum selection clause at Paragraph 10. In full, that paragraph states as follows:

> The validity, construction and effect of this Agreement are governed by, and subject to, the laws of the State of Delaware and the laws of the United States, as provided in the Plan. For purposes of litigating any dispute that arises directly or indirectly from the relationship of the parties evidenced by this Award or this Agreement, the parties hereby submit to and consent to the exclusive jurisdiction of North Carolina and agree that such litigation shall be conducted solely in the courts of Mecklenburg County, North Carolina or the federal courts for the United States for the Western District of North Carolina, where this grant is made and/or to be performed, and no other courts.

Mot. Ex. B, ¶ 10.

---

[7] Additionally, when a case is transferred under Section 1404 due to a forum selection clause, "the original venue's choice of law rules do not apply." *Atlantic Marine*, 571 U.S. at 51.

The parties do not dispute they are bound by a valid and enforceable forum selection clause, as set forth in the Award Agreement. Nor do they dispute that this action arises from the parties' relationship as evidenced in the Award Agreement and is therefore subject to the purview of that clause. Rather, their disagreement concerns which forum the clause designates as appropriate, specifically, whether the phrase "where this grant is made/or to be performed" signifies a forum where this action may proceed. The question on this motion to transfer venue, then, is a narrow one, focused on construing the forum selection clause to determine which forum, or fora, the parties agreed upon.

Federal law applies to the construction of a forum selection clause, and Courts employ ordinary rules of contract interpretation. *Wall Street Aubrey Golf, LLC v. Aubrey*, 189 F. App'x 82, 84-85 (3d Cir. 2006); *John Wyeth & Bro. Ltd. v. CIGNA Int'l Corp.*, 119 F.3d 1070, 1073-74 (3d Cir. 1997). In construing a contract, "the role of a court is to effect the parties' intent" as set forth in "the four corners of the agreement." *Sapp v. Indus. Action. Svcs., LLC*, 75 F.4th 205. 212 (3d Cir. 2023). *See also John Wyeth*, 119 F.3d at 1074 (holding that, "as with any contract provision," a forum selection clause must be interpreted by "first look[ing] to the text of the contract to determine whether it unambiguously states the parties' intentions."). The Court must "read the contract as a whole and give each provision effect "so as not to render any part of the contract mere surplusage." *Sapp*, 75 F.4th at 212.

The Third Circuit has consistently emphasized that "the plain language of the agreement guides [the Court's] construction: '[a] court is not authorized to construe a contract in such a way as to modify the plain meaning of its words, under the guise of interpretation.'" *Wall Street Aubrey Golf*, 189 F. App'x at 85 (quoting *Mellon Bank, N.A. v. Aetna Business Credit, Inc.*, 619 F.2d 1001, 1010 (3d Cir. 1980)). "We ascertain the intent of the parties to a written agreement

from the writing itself, and where the words contained in the agreement are clear and unambiguous, we enforce them." *Cowatch v. Sym-Tech. Inc.*, 253 F. App'x 231, 232 (3d Cir. 2007) (affirming the District Court's enforcement of a forum selection clause, concluding the court properly found its language unambiguous). It is only when the contract is ambiguous, that is, susceptible of more than one reasonable construction, that the Court may look to extrinsic evidence to discern the parties' intent. *Id.* (citing *Mellon Bank*, 619 F.2d at 1010 n. 9). However, the Court should "avoid ambiguities if the plain language of the contract permits...[and] should not torture the language ... to create ambiguities." *Wall Street Aubrey Golf*, 189 F. App'x at 85 (citing *First State Underwriters Agency of New England Reinsurance Corp. v. Travelers Ins. Co.*, 803 F.2d 1308, 1311 (3d Cir. 1986)).

Here, Defendants maintain the forum selection clause clearly and unambiguously requires this action to proceed in North Carolina. They point to language stating that litigation directly or indirectly concerning the incentive award shall be conducted "solely" in the state court of Mecklenburg County, North Carolina *or* the federal court for the Western District of North Carolina. Additionally, they emphasize this limitation on venue is consistent with the parties' express consent to North Carolina's "exclusive jurisdiction," as also set forth in the forum selection clause.

Defendants further argue that, although the Complaint asserts New Jersey is an appropriate venue based on the portion of the clause that states "where this grant is made and/or to be performed," Plaintiffs' reliance on that phrase is misplaced. They maintain such language does not create a third option for venue, in some unspecified jurisdiction outside of North Carolina, but rather constitutes a mere explanatory clause, clarifying that the courts of North Carolina have been chosen to litigate matters concerning the Award Agreement because award

7

payor BOA is headquartered in that state. Thus, Defendants argue this Court must enforce the plain language of the clause, which clearly states that any litigation must proceed in Mecklenburg County, North Carolina or the Western District of North Carolina, "and no other courts."

In opposition, Plaintiffs argue the forum selection clause presents a series of potential locations for litigation, including North Carolina but also the place where the grant is made and/or to be performed. According to Plaintiffs, the clause must be read as "a list specifying two jurisdiction anchors—BOA's home state and the state in which the grant was to be made and/or performed—and a third clause limited venue to those locations." (Pl. Opp'n at 18.) They arrive at this interpretation by contending the clause's reference to "the courts of Mecklenburg County, North Carolina or the federal courts for the United States [District Court] for the Western District of North Carolina" does not express the only venue choices but rather constitutes a "nested series," or series-within-a-series, that serves to further limit where in North Carolina litigation may be brought. In Plaintiffs' view, the forum selection clause is unwieldy and complex. Consequently, they argue that "[r]emoving the nested series adds more clarity to the sentence," simplifies it, and illuminates its true meaning. (*Id.*) According to Plaintiffs, to ascertain the agreed-upon fora, the clause must be read as follows: "The parties hereby submit and consent to the exclusive jurisdiction of North Carolina …, where this grant is made and/or to be performed, and no other courts." (*Id.*)

Additionally, Plaintiffs argue that Defendants' effort to reduce the text stating "where this Award is made" to a mere descriptor of North Carolina, that is, to parenthetical language, necessarily fails because it renders the phrase as surplusage, a redundant reference to North Carolina. In contrast, Plaintiffs contend their interpretation not only comports with grammatical

rules but also makes sense in the factual context of the parties' relationship, in which they anticipated payment of Plaintiffs' deferred incentive awards was to be made in New Jersey, not in North Carolina. In sum, Plaintiffs maintain that the words: "where this grant is made and/or to be performed" are clearly intended to identify a second location in a series of potential fora, and argue that location is New Jersey, where Plaintiffs performed the underlying services and would receive the incentive award.

Upon consideration of these arguments and after a careful reading of the forum selection clause, the Court finds the clause's plain language provides only two possible fora: the state court in Mecklenburg County, North Carolina or the federal court for the Western District of North Carolina. An examination of the clause confirms that, in clear and express language, the parties assented to two essential limitations concerning litigation. First, the parties consented to North Carolina's "*exclusive* jurisdiction" for the litigation of disputes concerning the deferred compensation award. Award Agreement, ¶ 10. Second, they "agree[d] that such litigation shall be conducted *solely* in the courts of Mecklenburg County, North Carolina or the federal courts for the United States for the Western District of North Carolina." *Id.* (emphasis added). The conjunction "or" between the identified courts presents a binary choice of litigation fora, a closed set bookended by the introductory word "solely" and the concluding language "and no other courts." *Id.* The intervening phrase, set off by commas, does not and cannot add yet another, unspecified forum in the location "where this grant is made and/or to be performed." That phrase is not preceded by the word "or" such that the sentence could be read as permitting litigation to be conducted in Mecklenburg County or the Western District of North Carolina *or* some third venue option.

Under any plausible reading of the sentence, the phrase "where this grant is made and/or to be performed"—on which Plaintiff relies to argue that venue is appropriate in some place other than North Carolina—can only be understood as a subordinate, nonrestrictive clause. To explain, the Court must set forth a few grammatical rules. Subordinate clauses cannot stand on their own as an independent sentence but rather provide additional information about a noun in the main clause, that is, the portion of the sentence that can stand alone. *See Grammarly: What is a Subordinate Clause? (With Examples)*, http://www.grammarly.com/blog/grammar/subordinate-clause (last visited Feb. 24, 2026). They often begin with a word signifying their purpose, for example "because" to introduce a reason, "when" to define a time, or "where" to describe a place. *Id.* Subordinate clauses set apart by commas, like the clause at issue here, can be removed from a sentence without changing its essential meaning and are thus referred to as "nonrestrictive clauses." *Id.* "Often, nonrestrictive clauses will 'interrupt' a main clause, … and when that happens, you should insert a comma both before and after the clause." *Id.* Applying those basic rules, the Court construes the phrase in dispute as providing additional, albeit non-essential information about the immediately preceding portion of the sentence, selecting certain courts in North Carolina as the bargained-for venue. Simply put, "where this grant is made and/or to be performed," set off from the rest of the forum selection clause by commas, describes the designated venue's location, here linking BOA's home state of North Carolina to that venue selection.

The Court recognizes that the placement of this subordinate clause in relation to the rest of the sentence is grammatically inartful. The subject of the main clause is the *courts* of North Carolina rather than the state itself. As Plaintiff notes, the courts could not possibly be where the incentive award is to be made or performed. In other words, the descriptive, subordinate clause

relates to the wrong noun in the main clause. However, this minor imprecision cannot upend the forum selection clause's straightforward, unambiguous text, directing that any litigation must proceed solely in North Carolina's state or federal court.

This closed set of two options admits no expansion, notwithstanding Plaintiffs' effort to persuade the Court that the forum selection clause presents a main series of fora—North Carolina, the place where the grant is made and/or performed, and no other courts—with an embedded nested series. Plaintiffs' interpretation elides the critical portion of the forum selection clause, which states that the parties "agree that such litigation shall be conducted solely in the courts of Mecklenburg County, North Carolina or the federal courts for the United States for the Western District of North Carolina." Award Agreement, ¶ 10. To recast such a clear expression of the only two courts where litigation may be pursued as a nested series essentially requires a substantial revision of the sentence, contrary to well-established principles of contractual interpretation.

Plaintiffs also argue that, in interpreting the forum selection clause, the Court must consider that the award at issue was, at least in part, based on work performed by Plaintiffs in New Jersey. Essentially, they urge the Court to look to extrinsic evidence, beyond the four corners of the agreement, in determining the parties' intention concerning the meaning of "where this grant is made and/or performed." However, this argument is unavailing. First, for the reasons already discussed, the Court finds the forum selection clause is unambiguous, rendering any consideration of extrinsic evidence unwarranted. Second, Plaintiffs' position that this phrase contemplates litigating in fora outside of North Carolina runs counter to the context of the entire forum selection clause. That context narrows the potential fora to "solely" the courts of North Carolina, which have "exclusive" jurisdiction, "and no other courts." Despite such language,

Plaintiffs press an interpretation that expands litigation to potentially limitless venues, depending on where the award-receiving employee performed the work underlying the award or where that employee happens to be when the award is made. This reading renders the forum selection clause so broad as to be meaningless.

In short, the governing forum selection clause is clear. This action may only proceed in the state court in Mecklenburg County, North Carolina or the federal court for the Western District of North Carolina. Thus, under *Atlantic Marine*, transfer to the Western District of North Carolina is required, unless doing so would contravene public interest. And, "because those [public interest] factors will rarely defeat a transfer motion, the practical result is that forum-selection clauses should control except in unusual cases." *Atl. Marine*, 134 S. Ct. at 64.

Here, Plaintiffs assert this Court is equally capable as the Western District of North Carolina of reaching an effective and efficient resolution of this matter. They further point out that any potential recovery Plaintiffs may obtain against Defendants would be collectible in this jurisdiction and thus enforcement of any judgment would not pose any obstacle to proceeding in the District of New Jersey. For purposes of this motion, the Court accepts these assertions. However, Plaintiffs fail to point to any public interest factor that outweighs enforcement of the forum selection clause, in accordance with the burden imposed by *Atlantic Marine*. 571 U.S. at 63.

Therefore, under the parties' valid and enforceable forum selection clause, this action must be transferred to the federal district court specified therein, the Western District of North Carolina.

**III.  CONCLUSION**

For the foregoing reasons, the Court concludes the relief sought by Defendants on this motion to transfer venue is warranted. This action will be transferred to the Western District of North Carolina pursuant to Section 1404(a).

A separate form of Order will accompany this Opinion.

 /s/ *André M. Espinosa*
ANDRÉ M. ESPINOSA
United States Magistrate Judge

Dated:  March 31, 2026